IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**IRVIN KENNETH CLARK**                                                    **PLAINTIFF**

v.                                              CIVIL ACTION NO. 1:16-cv-208-HSO-JCG

**JACQUELINE BANKS,** *Supt.***,**
**R. WOODALL,** *MD***, and MIKE HATTEN,**
*Medical Director*                                                         **DEFENDANTS**

## REPORT AND RECOMMENDATION

BEFORE THE COURT are two motions for summary judgment: the Motion for Summary Judgment Based on Sovereign and Qualified Immunity (ECF No. 42) filed by Defendants Jacqueline Banks and Mike Hatten, and the Motion for Summary Judgment (ECF No. 46) filed by Defendant R. Woodall. Plaintiff filed a respective response in opposition to each (ECF No. 50); (ECF No. 52), Defendant Woodall filed a Rebuttal (ECF No. 55), and Plaintiff thereafter filed a Sur-Reply (ECF No. 56). Having considered the submissions of the parties, the record as a whole, and relevant law, the undersigned recommends that the Motion for Summary Judgment Based on Sovereign and Qualified Immunity (ECF No. 42), filed by Jacqueline Banks and Mike Hatten, and the Motion for Summary Judgment (ECF No. 46), filed by R. Woodall, both be GRANTED.

### I. BACKGROUND

A. <u>Procedural History</u>

Plaintiff Irvin Kenneth Clark is a prisoner in the custody of the Mississippi Department of Corrections ("MDOC") housed at South Mississippi Correctional

Institution ("SMCI") in Leakesville, Mississippi. He filed his Complaint (ECF No. 1) on June 16, 2016, brought pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. He seeks a court-ordered MRI of his shoulder and $50,000 in damages from each defendant. (ECF No. 1, at 4). Plaintiff proceeds *pro se* and *in forma pauperis*.

On January 18, 2017, the Court held an omnibus hearing,[1] during which Plaintiff supplemented the allegations in his Complaint. *See* Minute Entry Jan. 18, 2017; Transcript of Omnibus Hearing (ECF No. 44). The Court also granted Plaintiff's Motion for Leave to Amend Complaint (ECF No. 34) during the hearing, by which Plaintiff attached to his Complaint two additional sick call requests he had made since filing suit. *See* Text Order Jan. 19, 2017. Defendants thereafter filed the instant motions for summary judgment (ECF No. 42), (ECF No. 46) with supporting memoranda. (ECF No. 43); (ECF No. 47).

B. Plaintiff's Allegations

Plaintiff alleges that, in November 2015, he began to experience "pain and discomfort" in his left shoulder. (ECF No. 1, at 4). He testified at the omnibus hearing that this pain was likely related to the fact that his shoulder had been reconstructed in 1985 after he suffered a gunshot to his left arm and/or shoulder. *See* (ECF No. 44, at 13-14). As a result of the shoulder pain, Plaintiff says that he went to medical and was seen by Nurse Practitioner Woodland, who ordered an x-

---

[1] The omnibus hearing functioned as a screening hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

ray of his shoulder. (ECF No. 1, at 4). In a written correspondence dated December 11, 2015, Woodland notified Plaintiff that there was "a variance" in his x-ray, which would be discussed with Plaintiff during his next clinic visit. *Id.* at 4; (ECF No. 1-3, at 1).

He says that he was next seen by Dr. McCleave, who referred Plaintiff to be seen by an outside specialist at Southern Bone and Joint in Jackson, Mississippi. (ECF No. 1, at 4); (ECF No. 44, at 12). Plaintiff testified that "[m]onths passed without the reference being fulfilled," so he again reported to sick call and was seen by Defendant Dr. Woodall on February 27, 2016. (ECF No. 1, at 4). He says Dr. Woodall administered a "shot" for "tendonitis with deltoid," but that this did not help. (ECF No. 44, at 12). He says Dr. Woodall told him that the delay in Plaintiff seeing a specialist was due to the fact that Woodall was "waiting on Jackson to fulfill the MRI request." *Id.* Plaintiff states that the next time he reported to medical he saw Dr. McCleave again, who explained that "the reason [Plaintiff] hadn't went to Jackson, the reason [he] hadn't been to Southern Bone & Joint, to have the MRI performed [was] because the guy that does the offsites quit, and they didn't have nobody to fill the reference." *Id.* (all sic in original).

Plaintiff testified that he received two additional x-rays, one each ordered by Dr. McCleave and Dr. Woodall, in April and May of 2016, and the three x-rays produced conflicting results, suggesting that a bone spur appeared between the first two x-rays, and that the spur had been removed between the second and third x-rays. *Id.* at 21-24, 26-29. However, Plaintiff said he did not undergo any medical

procedure to remove the spur. *Id.* at 28-29. Plaintiff said that he was frequently seen by medical staff throughout March, April, and May of 2016 and, during those visits, was offered additional shots for pain (which he refused) and prednisone for swelling. *Id.* at 21-25. Plaintiff stated that, on May 11, 2016, Woodland told him that nothing else could be done for his arm besides these pain-management options. *Id.* at 25.

Plaintiff asserts that he repeatedly went to medical and repeatedly asked about when he would be taken to have an MRI in order to determine the cause of his arm pain and restricted arm movement, but that he has yet to have an MRI of his arm or otherwise visit with a specialist. *Id.* at 13. He states that the pain and limited range of motion in his arm persist. (ECF No. 1, at 5). Plaintiff asserts that Defendant Banks, the superintendent of SMCI, knew of his ongoing medical problem but "failed to solve the situation." *Id.* He says that he wrote her a letter explaining his unsuccessful attempts to fix his shoulder pain on April 22, 2016 and she responded in writing, instructing Plaintiff to "submit a request to medical." *Id.* at 5-6.

Plaintiff asserts that Defendant Woodall, as the "senior physician" at SMCI, "has not insured[sic] that the Plaintiff be seen by the Southern Bone and Joint Clinic as was request (ordered) by Doctor McCleave." *Id.* at 6. He also asserts that Dr. Woodall lowered the dosage of his chronic pain medication in retaliation for filing this lawsuit. (ECF No. 44, at 30). However, he conceded at the omnibus hearing that he did not file any administrative grievance with regard to this

retaliation claim before filing his Complaint. *Id.* at 31-32. He makes this concession again in his Memorandum in Opposition to Woodall's Motion for Summary Judgment. *See* (ECF No. 53, at 1).

Plaintiff alleges that Defendant Hatten, the medical director at SMCI, has shown deliberate indifference to Plaintiff's medical treatment through his attitude and actions. (ECF No. 1 at 7-8). Specifically, Plaintiff maintains, "After informing Mr. Hatten of my medical problem[,] he stated[,] 'You've finish[ed] the grievance process take us to court, I don't care.'" *Id.* at 7.

## II. DISCUSSION

A. Legal Standards

   a. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R*

*Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249). In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

    b. <u>The Prison Litigation Reform Act</u>

Because Plaintiff is a prisoner pursuing a civil action seeking redress from government employees, the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321, H.R. 3019 (codified as amended in scattered titles and sections of the U.S.C.), applies and requires that this case be screened.

The PLRA provides that "the Court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see* 28 U.S.C. § 1915(e)(2)(B). Thus, the statute "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

B. <u>Analysis</u>

The Motion for Summary Judgment (ECF No. 42) filed by Defendants Banks and Hatten argues that Banks and Hatten are entitled to sovereign immunity, insofar as Plaintiff seeks monetary damages against Banks and Hatten in their official capacities, and that they are otherwise entitled to qualified immunity against Plaintiff's claims. Banks and Hatten argue that Plaintiff's allegations fail to establish that they were deliberately indifferent to Plaintiff's medical needs. Mem. in Supp. to Defs' Mot. Sum. J. (ECF No. 43, at 6-7). Alternatively, they assert that the undisputed record before the Court demonstrates that their conduct and state of mind did not evince deliberate indifference. *Id.* at 7.

Plaintiff responds by asserting (1) that "Defendants have basically conceded that Plaintiff's request for a MRI is not barred by the Eleventh Amendment" and (2) that inconsistencies in Plaintiff's medical records prevent a summary finding that Banks and Hatten were not deliberately indifferent. Mem. in Opp. To Defs' Mot. Sum. J. (ECF No. 51, at 2-8). "What is to be made perfectly clear," says Plaintiff, "is that both defendants Banks and Hatten was[sic] made aware of the pain Plaintiff was experiencing with his shoulder problem." *Id.* at 9.

The Motion for Summary Judgment (ECF No. 46) filed by Defendant Woodall argues that Woodall did not violate Plaintiff's constitutional rights because he was not deliberately indifferent towards Plaintiff's medical needs. Specifically, Woodall asserts that Plaintiff's own allegations fail to establish either (1) that his alleged shoulder pain amounted to an excessive risk to his health or (2) that Dr. Woodall's

7

treatment of Plaintiff's shoulder pain evinced deliberate indifference towards Plaintiff's medical needs. Mem. in Supp. to Def's Mot. Sum. J. (ECF No. 47, at 5, 11-14). Alternatively, Woodall asserts that the undisputed record before the Court similarly establishes that Defendant Woodall was not deliberately indifferent to Plaintiff's serious medical needs. *Id.* Woodall also argues that Plaintiff failed to exhaust his claim that Woodall retaliated against Plaintiff for filing this suit. *Id.* at 7.

Plaintiff responds by arguing that the medical records in fact show

> [t]hat Dr. Woodall was well aware of the request for an MRI, by Dr. McCleave[,] that Dr. Woodall was aware of the initial findings in December 7, 2015 that the X-rays of the left shoulder was normal[,] that due to continued complaint of pain Dr. Woodall ordered another x-ray that showed "a spur with small fracture fragments," [and, that despite having this knowledge,] Dr. Woodall failed to ensure a MRI was performed.

Mem. in Opp. To Def's Mot. Sum. J. (ECF No. 53, at 6) (all sic in original).

i. Plaintiff's Claim for Monetary Damages Against Banks and Hatten in their Official Capacities is Barred by the Eleventh Amendment

"The Eleventh Amendment bars citizens of a state from suing their own state or another state in federal court unless the state has waived its sovereign immunity or Congress has explicitly abrogated it." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citing U.S. Const. amend. XI; *Hans v. Louisiana*, 134 U.S. 1, 11 (1890); *Ysleta del Sur Pueblo v. Texas*, 36 F.3d 1325, 1335 (5th Cir. 1994)). Congress has not abrogated state sovereign immunity under 42 U.S.C. § 1983. *Id.* (citing *Quern v. Jordan,* 440 U.S. 332, 339-40 (1979); *Richardson v. S. Univ.*, 118 F.3d 450,

453 (5th Cir. 1997)). And the State of Mississippi has not waived sovereign immunity for lawsuits filed in federal court. *See* Miss. Code Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.").

"The Eleventh Amendment also 'generally precludes actions against state officers in their official capacities." *Salinas v. Tex. Workforce Comm'n*, 573 F. App'x 370, 372 (5th Cir. 2014) (quoting *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004)). This is because "a suit against a state official in his or her official capacity … is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). However, an exception to this general rule has been carved out for suits against state officers in their official capacity that seek injunctive relief for violations of federal law. *Id.* n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Ex Parte Young*, 209 U.S. 123 (1908)).

Defendants Banks and Hatten are and were both employees and officers of MDOC. Because MDOC is an arm of the State of Mississippi, *Reeves v. King*, No 1:13-cv-492-KS-MTP, 2015 WL 461685, at *3-4 (S.D. Miss. Feb. 4, 2015), the Eleventh Amendment bars Plaintiff's claim for monetary damages against Defendants Banks and Hatten in their official capacities. To the extent that Plaintiff makes his claims against Banks and Hatten in their official capacities, the Eleventh Amendment bars his recovery of monetary damages on those claims.

9

> ii. <u>Defendants Banks, Hatten, and Woodall are Entitled to Qualified Immunity Because Plaintiff has Failed to Assert a Constitutional Violation</u>

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Accordingly, a government official is entitled to immunity from suit unless (1) Plaintiff has made allegations sufficient to show a violation of a constitutional right, and (2) the right at issue was "clearly established" at the time of the official's alleged misconduct. *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). When a government official raises the defense of qualified immunity to a Section 1983 claim, the plaintiff must provide "allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury." *Reyes v. Sazan,* 168 F.3d 158, 161 (5th Cir. 1999). Defendants can only be held liable for their own actions or inactions under 42 U.S.C. § 1983; liability may not be found by way of a respondeat superior theory. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010).

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[2] *Helling v. McKinney,* 509 U.S. 25, 31 (1993). The Eighth Amendment's protection against cruel and unusual punishment prohibits

---

[2] The Eighth Amendment is made applicable to the State of Mississippi and its agencies by virtue of the Due Process Clause of the Fourteenth Amendment. *Wilson v. Seiter,* 501 U.S. 294, 296-97 (1991).

10

deprivations that are not specifically a part of a prison sentence, but are "suffered during imprisonment." *Wilson v. Seiter,* 501 U.S. 294, 297 (1991) (citing *Estelle v. Gamble,* 429 U.S. 97 (1976)). This protection requires prison officials to "provide humane conditions of confinement," which includes ensuring that inmates receive adequate medical care. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994).

Determining the viability of a claim over conditions of confinement requires an inquiry into the defendant prison official's state of mind. *Wilson*, 501 U.S. at 302. Only where the prison official exhibits "deliberate indifference" towards a "substantial risk of serious harm" will an Eight Amendment violation be found. *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006). Thus, a prisoner must prove (1) an "objective exposure to a substantial risk of serious harm," (2) the prison official's knowledge of that risk, and (3) the prison official's disregard for that risk. *Id.*

The Fifth Circuit has elaborated upon the deliberate indifference standard in the context of medical care:

> Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

*Id.* at 346 (citations and internal quotation marks omitted). "Deliberate indifference is an extremely high standard to meet." *Id.* (citing *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

Regardless of whether Plaintiff has asserted his exposure to a substantial risk of serious harm and Defendants' knowledge of that risk, Plaintiff's allegations fail to establish Defendants' deliberate indifference towards Plaintiff's serious medical needs. Banks and Hatten assert that they are merely "administrators[,] not medical professionals" and therefore "make no treatment decisions regarding [Plaintiff's] care." (ECF No. 43, at 6). Plaintiff does not dispute this characterization of their roles at SMCI. As administrators who are not medical professionals, Banks and Hatten have "no authority or responsibility to evaluate patients or order any type of medical treatment." *Hunt v. Barry Telford Unit, TDCJ*, No. 5:15CV152, 2017 WL 1100721, at *5 (E.D. Tex. Mar. 24, 2017). "[P]rison officials who are not medical professionals are entitled to rely on the [medical] opinions of medical professionals." *Id.* (citations omitted); *see also Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008) ("Significantly, in determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals."); *Estes v. Rahorst*, No. 2:11-CV-0023, 2013 WL 5422874, at *6 (N.D. Tex. Sept. 27, 2013) ("Defendant Wallace, a clinic administrator, was entitled to rely upon the judgment of plaintiff's treating physicians and other medical professionals."). Therefore, regardless of the knowledge that Banks and Hatten might have had about the MRI Plaintiff sought, Banks and Hatten are not

responsible for the treatment decisions made by medical personnel at SMCI. Banks and Hatten are entitled to qualified immunity against Plaintiff's deliberate indifference claim.

The Court turns next to Dr. Woodall's alleged deliberate indifference towards Plaintiff's medical needs. Plaintiff's own allegations detail the fact that Dr. Woodall provided him with medical care for the pain and discomfort in his shoulder. Plaintiff says that Dr. Woodall evaluated Plaintiff in the medical clinic, provided him with medication for pain relief, and ordered an X-ray of Plaintiff's shoulder. Plaintiff's desire to have an MRI of his shoulder – even if, as he maintains, a referral request for this MRI remains outstanding[3] – does not render inconsequential the medical care that he did receive for his condition. Dr. Woodall's failure to arrange for an MRI of Plaintiff's shoulder does not constitute deliberate indifference to Plaintiff's medical needs. Indeed, an MRI is merely a diagnostic tool – it cannot cure Plaintiff's shoulder pain.

"Plaintiff has no constitutional right to the best medical treatment available." *Irby v. Cole*, No. 403CV141WHBJCS, 2006 WL 2827551 (S.D. Miss. Sept. 25, 2006) (citing *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978)). "A prisoner is not entitled to the treatment that judges might prefer, or medical treatment or therapy equivalent to that provided by Medicaid or Medicare." *Id.* (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1149 (5th Cir. 1982)). Moreover, the Court is not in a position to second-

---

[3] The Court notes that Plaintiff's medical records reflect that Dr. McCleave withdrew the referral request a week after it was submitted because Plaintiff "evidenced no pain at all" during his chronic care examination. *See* Decl. of Gloria Perry (ECF No. 42-1, at 4).

13

guess the medical judgment of a trained physician. *Domino*, 239 F.3d at 756 (citing *Estelle*, 429 U.S. at 107). Because Plaintiff has failed to state facts amounting to a violation of his constitutional rights by Dr. Woodall, Dr. Woodall is entitled to qualified immunity against Plaintiff's deliberate indifference claim.

Finally, turning to Plaintiff's retaliation claim, the Court concludes that this claim should dismissed for failure to exhaust administrative remedies. The PLRA mandates that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] … by a prisoner … until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The administrative grievance process must be exhausted "pre-filing." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

Dr. Woodall argues that Plaintiff failed to exhaust his administrative remedies as to the retaliation claim. *See* (ECF No. 47, at 7). Plaintiff alleges that Dr. Woodall has retaliated against him for filing the instant lawsuit by reducing the dosage of his chronic pain medication. As conceded by Plaintiff, he could not possibly have exhausted this claim before filing his Complaint.

### III. RECOMMENDATION

Based on the foregoing, the undersigned recommends that the Motion for Summary Judgment Based on Sovereign and Qualified Immunity (ECF No. 42), filed by Defendants Jacqueline Banks and Mike Hatten, and the Motion for Summary Judgment (ECF No. 46), filed by Defendant R. Woodall, both be GRANTED. Accordingly, Plaintiff's deliberate indifference claims should be

dismissed with prejudice for failure to state a claim, and Plaintiff's claim retaliation claim should be dismissed without prejudice for failure to exhaust administrative remedies.

### IV. NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

The Clerk of Court is directed to mail this Report and Recommendation to Plaintiff via USPS certified mail.

**SIGNED,** this the 2nd day of January, 2018.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE